IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BRENT HENRICHS,<br><br>          Plaintiff,<br><br>vs.<br><br>SAFEWAY, INC., a corporation,<br><br>          Defendant. | CV 13-80-BU-JCL<br><br><br>ORDER |

This wrongful discharge case comes before the Court on Defendant Safeway Inc.'s ("Safeway") motion for summary judgment on Plaintiff Brent Henrichs' ("Henrichs") claims under the Montana Wrongful Discharge from Employment Act, Mont. Code Ann. § 39-2-901 et seq. The motion is granted in part and denied in part as set forth below.

## I.  **Background**[1]

---

[1]  Safeway argues as a threshold matter that Henrichs' statement of genuine issues does not adequately identify the facts that are disputed and those that are not, as required by Local Rule 56.1(b). As a result, Safeway asks the Court to disregard Henrichs' statement of genuine issues and treat the facts it has offered in support of summary judgment as true and undisputed. While Henrichs' statement of genuine issues is hardly a model of clarity, it is not so deficient as to warrant such a drastic remedy. Consistent with well-established summary judgment standards, the Court thus takes the following facts from the materials of record

Dan Cruson ("Cruson") has been the District Manager for Safeway in Montana since 1995. (Doc. 22, ¶ 1). At that time, Henrichs was an assistant store manager at one of Safeway's Missoula stores. (Doc. 22, ¶ 1). In 1997 or 1998, Cruson promoted Henrichs to the position of store manager at the Safeway store in Anaconda. (Doc. 22, ¶ 2).

In October 2005, Henrichs made arrangements with the local Pepsi distributor, Harrington Bottling Company, for his then 18-year-old son Kyle to work stocking Pepsi products at the Anaconda Safeway store. (Doc. 22, ¶ 8). When the job proved too difficult for Kyle, who has autism, Henrichs' two younger children – Lynnsi and Matthew – took it over. Lynnsi was 14-years-old at the time and Matthew was only ten. Although Henrichs' children performed all of the work, Henrichs placed the job in his own name. Henrichs' name appears on all of the Harrington Bottling Company paperwork, and the paychecks were issued to him. (Doc. 22, ¶¶ 10-12; Doc. 22-4). Henrichs reported earnings from the job to the Internal Revenue Service ("IRS") and paid the taxes due. (Doc. 22, ¶ 17).

In December 2005, Cruson was visiting the Anaconda Safeway store when he saw Henrichs' ten-year-old son Matthew stocking Pepsi products. (Doc. 22, ¶

_____

and, where disputed, views them in the light most favorable to Henrichs as the non-moving party.

4).  Henrichs was not in the store that day, so Cruson spoke with the assistant store manager about why Matthew was doing the work.  (Doc. 22-1, at 3; Doc. 22-2, at 11).  When Henrichs heard that Cruson had been asking about why Matthew was stocking Pepsi products at the store, Henrichs sent Cruson an email explaining that "[t]his is my daughters job, she works for Pepsi on weekends stocking soda for them," and Matthew "helps her with this when she has after school/weekend commitments."  (Doc. 22-3).

Approximately one week later, Cruson spoke on the telephone with Henrichs about the situation and documented their conversation in writing. (Doc. 22, ¶6).  Henrichs maintains he told Cruson during this conversation that the Pepsi job was in his own name.  (Doc. 25, ¶ 6; Doc. 25-1, at 6).  Cruson recalls matters differently and claims he was under the impression that Henrichs' daughter Lynnsi was the Pepsi distributor's employee.[2]  Cruson's notes reflect that he told Henrichs he "was concerned that due to [Matthew's] age, and since he truly isn't the employee for Pepsi, that if he were to get hurt somehow, Safeway would be liable."  (Doc. 22, ¶6).  Cruson wrote that he "explained [his] concerns, and [Henrichs] said he understood and would stop [Matthew] from doing this

---

[2] Because Lynnsi was 14 years old, she legally could have held the job in her own name.  *See* Mont. Code Ann. § 41-2-108.

immediately." (Doc. 22, ¶ 6). With that, Cruson considered the matter resolved and did not follow up or press the issue any further. (Doc. 22, ¶ 22).

But the record reflects that Matthew and his sister continued stocking Pepsi products for the next several years. (Doc. 22, ¶ ¶ 12, 14). In fact, Henrichs' children also started doing similar work for the local Coca-Cola distributor, Mile High Beverages. (Doc. 22, ¶ 13). The position with Mile High Beverages involved stocking Coca-Cola products not only at the Anaconda Safeway store, but also at Safeway's competitor, the Anaconda Albertsons store. (Doc. 22, ¶ 13). As with the Pepsi position, Matthew and Lynnsi did all of the work while Henrichs placed his own name on the employment paperwork, received the paychecks, and reported and paid taxes on the earnings. (Doc. 22, ¶ 13-17, Doc. 25, ¶ 3).

On February 3, 2012, Henrichs injured his knee while at work, and filed an injury report with Safeway that same day. (Doc. 25, ¶ 8). Later that month, Henrichs told Cruson that he needed to have surgery on his injured knee and would be unable to work for six to eight weeks. Henrichs sought coverage from his insurance company, but did not initially report his injury as a workplace injury

or submit a workers' compensation claim.[3]  (Doc. 25-1, at 7; Doc. 27-1, at 1).

Henrichs explains that he and other Safeway store managers "were feeling a lot of pressure about the number of workmen's-comp claims through the district and the effect that it was going to have on store managers' bonuses" and says he "didn't want [his] workmen's comp claim to be the reasons that the rest of the district didn't achieve their goals and affect their bonuses or [his] bonus or Mr. Cruson's bonus."  (Doc. 25-1, at 7).

In fact, Henrichs claims that Cruson treated him differently after he reported his injury and says he felt like his job was in jeopardy.  (Doc. 25-1, at 7).  Before Henrichs injured himself on the job, for example, Cruson visited the Anaconda store approximately once a month.  But after Henrichs reported his injury, Cruson began visiting the store three to four times each month and was constantly calling. (Doc. 25-6, at 4).  During a conference call on March 5, 2012, just days before Henrichs was scheduled to take leave for surgery, Cruson and another management employee berated Henrichs and criticized his job performance.  (Doc. 25-11, at 5-7).

On March 9, 2012,  Cruson and Safeway's Human Resource Representative,

---

[3] Henrichs did not submit his injury as a workers' compensation claim until after Safeway terminated his employment several months later.

Steve Brezenski ("Brezenski"), met with Henrichs at the Anaconda Safeway store. Cruson provided Henrichs with his yearly 2011 evaluation and rated his performance as "satisfactory or above." (Doc. 25-5, at 19). Henrichs began his medical leave of absence after his shift that day, and returned to work approximately six weeks later, on May 7, 2012. (Doc. 25-5, at 20). Four days after Henrichs' return, Cruson provided him with a list of eleven items regarding his job performance that needed improvement or could result in his termination. (Doc. 25-5, at 20-21). Henrichs claims that as the summer wore on, Cruson unjustifiably criticized him and referred to him as a "whiner." (Doc. 25-1, at 8; 25-5, at 22).

Cruson recalls hearing from a representative of one of Safeway's vendors in August 2012 that Henrichs was working for the local Pepsi distributor and stocking Pepsi at the Anaconda Albertsons store. (Doc. 22, ¶ 34). Although the representative remembers the conversation differently (Doc. 25-7), it is undisputed that Safeway then initiated an investigation and learned that Henrichs had maintained outside employment with Harrington Bottling Company for several years. (Doc. 22, ¶¶ 35-37).

On September 14, 2012, Cruson and Brezenski met with Henrichs to discuss his outside employment. (Doc. 22, ¶ 37). Henrichs confirmed that he was named

as the Pepsi distributor's employee and revealed that he was also named as an employee of the local Coca-Cola distributor, although he explained that his children had always performed all of the actual work associated with the two positions. (Doc. 22, ¶ 38; Doc. 25-5, at 10). On September 19, 2012, Safeway terminated Henrichs' employment for violating company "policy and procedure." (Doc. 22-13). Safeway takes the position that it discharged Henrichs because he failed to disclose his outside employment with Harrington Bottling Company and Mile High Beverages as required by Safeway's Code of Business Conduct.

On September 10, 2013, Henrichs commenced this action against Safeway in the Montana Third Judicial District Court, and Safeway later removed the case to this Court based on diversity jurisdiction.[4] (Doc. 1). Henrichs asserts claims under the Montana Wrongful Discharge from Employment Act, Mont. Code Ann. § 39-2-904(1)(a), (b), and (c), alleging that his termination was in retaliation for reporting a violation of public policy, was not for good cause, and was in violation of the express provisions of Safeway's written personnel policies. (Doc. 5, at 6). Henrichs seeks lost wages, fringe benefits, attorneys fees, and punitive damages. (Doc. 5, at 6-7). Safeway moves for summary judgment on all aspects of

---

[4] Sitting in diversity jurisdiction, this Court applies the substantive law of Montana as the forum state. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

Henrichs' claims.

## II.    <u>Summary Judgment Standards</u>

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial must produce evidence that  either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id*. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III.  Discussion

Montana's Wrongful Discharge from Employment Act ("the Act") provides as follows:

(1)  A discharge is wrongful only if:

> (a)  it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b)  the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39-2-904. Henrichs asserts claims against Safeway under all three subsections.

### A.    Retaliation for reporting a violation of public policy

Safeway argues it is entitled to summary judgment on Henrichs' claim under subsection (a) because Henrichs has not come forward with any evidence that he was discharged for reporting a violation of public policy.[5]  The Court agrees.

The Act defines "public policy" as "a policy in effect at the time of the discharge concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule."  Mont. Code Ann. § 39-2-903(7).  Henrichs maintains that under Montana law, it is a violation of public policy for an employer to discharge a worker for asserting his right to workers' compensation.  For support, he relies on Mont. Code Ann. § 39-71-317(1), which states that "[a]n employer may not use as grounds for terminating a worker the filing of a [workers compensation] claim...."  Although Henrichs did not actually file a workers' compensation claim until after Safeway terminated his employment, he apparently takes the position that when he filed his injury report with Safeway he was effectively asserting his right to workers' compensation.  According to Henrichs, Cruson treated him differently from that point forth by unjustifiably demeaning him and criticizing his work performance.  Henrichs maintains that Safeway ultimately terminated his employment in retaliation for

---

[5] Henrichs does not allege that Safeway discharged him in retaliation for refusing to violate public policy.

filing his injury report, and in doing so violated the public policy articulated in Montana's workers' compensation statutes.

This argument is problematic for a number of reasons. To begin with, Henrichs does not cite any authority for the proposition that simply filing an injury report is sufficient to trigger the protection afforded by Mont. Code Ann. § 39-71-317(1), which specifies only that an employer may not terminate an employee for "the filing of a claim under this chapter." But even assuming, without deciding, that it would violate Montana's public policy for an employer to discharge an employee based on the filing of an injury report, Henrichs fails to explain how such an alleged violation could give rise to a claim under Mont. Code Ann. § 39-2-904(1)(a). The relevant portion of subsection (a) plainly states that for a discharge to be wrongful it must have been "in retaliation...for reporting a violation of public policy." The statute thus provides a claim if an employee is discharged for *reporting* a violation of public policy, but says nothing about providing a claim where, as here, an employer allegedly discharges an employee *in violation of* public policy. Unless an employee is discharged "for reporting a violation of public policy," there can be no claim under this particular statutory provision.

Here, there is simply no evidence that Henrichs reported a violation of

public policy to Safeway, or that Safeway discharged him in retaliation for doing so. The only thing that Henrichs reported to Safeway was his on-the-job injury. An on-the-job injury is not itself a violation of public policy, which means that when Henrichs reported his on-the-job injury to Safeway, he was not "reporting a violation of public policy" within the meaning of the statute. Even if the Court were to somehow construe Henrichs' injury report as a workers' compensation claim, which it is not inclined to do, the result would be no different. Reporting or filing a workers' compensation claim is not a violation of public policy. Thus, even assuming Safeway discharged Henrichs in retaliation for reporting a workers' compensation claim, he would not have a cause of action under Mont. Code Ann. § 39-2-904(1)(a).

This is not to say that Henrichs will necessarily be left without a remedy if he can establish that Safeway discharged him for filing his injury report. As discussed below, however, any potential remedy lies not under subsection (a), but under the good cause prong set forth in Mont. Code Ann. § 39-2-904(1)(b).[6]

---

[6] To recover punitive damages under the Act, a plaintiff must establish "by clear and convincing evidence that the employer engaged in actual fraud or actual malice in the discharge of the employee in violation of 39-2-904(a)(1)." Mont. Code Ann. § 39-2-905(2). Because Henrichs' claim under § 904(a)(1) is subject to summary dismissal, his corresponding claim for punitive damages is properly dismissed as well. *See* Mont. Code Ann. § 39-2-905(3).

**B.     Good cause**

Under Mont. Code Ann. § 39-2-904(1)(b), a discharge is wrongful if it "was not for good cause and the employee had completed the employer's probationary period of employment."   Safeway argues that Henrichs' claim under subsection (b) fails as a matter of law because the undisputed evidence establishes that it had good cause for terminating his employment.

An employer has "good cause" to discharge an employee when it has "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, a disruption of the employer's operation, or other legitimate business reason."  Mont. Code. Ann. § 39-2-903(5).   "A legitimate business reason is one that is 'neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business.'" *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, (Mont. 2008) (*quoting Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 7 (Mont. 1993)).

"To defeat a motion for summary judgment on the issue of good cause, the employee may either prove that the given reason for the discharge is not 'good cause' in and of itself, or that the given reason 'is a pretext and not the honest reason for the discharge.'" *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, 441 (Mont. 2008) (*quoting Johnson v. Costco Wholesale*, 152 P.3d 727, 734

13

(Mont. 2007). To create an issue of fact regarding pretext, the employee must provide more than "mere denial or speculation." *Johnson*, 152 P.3d at 734. In determining whether such a factual issue exists, "[a]ll reasonable inferences which can be drawn from the evidence presented must be drawn in favor of the non-moving party." *Vettel-Becker v. Deaconess Medical Center of Billings, Inc.*, 177 P.3d 1034, 1039 (Mont. 2008).

Safeway terminated Henrichs' employment for the stated reason that he had violated company "policy and procedure" as set forth in its Code of Business Conduct ("CBC"). (Doc. 22-13; Doc. 22-12). In particular, Safeway claims Henrichs' violated a section of the CBC that "requires all employees" to be "truthful in [their] dealings with each other and to give honest information in all circumstances." (Doc. 22-8, at 6). Safeway also maintains that Henrichs violated the CBC's conflicts of interest section, which generally prohibits an employee from engaging in "outside work, interests or activities that may impair his or her judgment or objectivity as it relates to the performance of his or her job with Safeway, hinder the timely performance of his or her duties, discredit the company or conflict with its best interests." (Doc. 22-8, at 8). The conflicts of interest section requires that any outside employment "be kept separate from and not conflict with [the employee's] duties at Safeway," and states that an employee

14

should not take work "which competes with Safeway, provides any commodity or service which Safeway provides, or deprives Safeway of business." (Doc. 22 -8, at 9). The CBC mandates that an employee report to his "immediate supervisor any circumstances, interests or relationships that [the employee] believe[s] may be inconsistent with the letter or the spirit of" the conflicts of interest section. (Doc. 22-8, at 9).

Henrichs disputes that Safeway had good cause for terminating him for violating any of these CBC provisions, and claims he disclosed to Cruson during their telephone conversation in 2005 that he held outside employment with Pepsi in his own name. For support, he points to the following excerpt from his own deposition testimony:

> Q:   You didn't tell [Cruson] in this e-mail that: "Hey, I'm the employee and they're just doing the work," did you?
>
> A:   Well, we didn't talk about it in that email, but we talked about it on the phone call that I got on the 29th.

(Doc. 25-1, at 6).

But Henrichs subsequently confirmed that Cruson's version of events was accurate. Cruson's note summarizing his telephone conversation with Henrichs reads as follows:

> I observed [Henrichs'] youngest son (11 or 12 years of age?) Stocking Pepsi

brand pop in Store #3256.  Apparently, [Henrichs'] daughter is actually employed by Pepsi and her younger brother comes in to assist her.  When she has other conflicts, he comes in by himself.  This is what I observed during my store visit of Wednesday, December the 21st.

I was concerned that due to his age, and since he truly isn't the employee for Pepsi, that if he were to get hurt somehow, Safeway would be liable.  I called Brent back today to discuss this issue with him, explained by concerns, and Brent said he understood and would stop him from doing this immediately.

(Doc. 25-1, at 6).

Cruson's note makes clear it was his impression after speaking with

Henrichs that Henrichs' daughter was the person actually employed by Pepsi.  He

says nothing about having been informed that Henrichs held outside employment.

Henrichs read Cruson's note out loud at his deposition and confirmed that it was

an accurate summary of their conversation.   (Doc. 25-1, at 6).  It is also worth

noting that when Henrichs and Cruson had this conversation in December 2005,

the job stocking Coca-Cola products for Mile High Beverages had not yet begun.

(Doc. 22, ¶¶ 12-13).   As Safeway correctly points out, Henrichs could not have

disclosed employment that did not then exist.

On its face, the reason given by Safeway for terminating Henrichs'

employment qualifies as good cause.  The undisputed evidence establishes that

Henrichs held outside employment with Harrington Bottling Company and Mile

High Beverages for several years without reporting the employment to Safeway. The undisputed evidence also establishes that the job with Mile High Beverages involved stocking Coca-Cola products at one of Safeway's competitors in violation of the CBC's conflicts of interest provisions. The fact that Henrichs claims his children performed all of the work involved is immaterial. It is undisputed that Henrichs held the jobs in his own name, received the paychecks in his own name, and reported and payed taxes on the earnings.

While the reason given by Safeway for Henrichs' discharge is in and of itself good cause, Henrichs' claim may nonetheless survive summary judgment if he can show there is a genuine issue of material fact as to whether that reason was simply a pretext and not the honest reason for his discharge. *See Becker*, 191 P.3d at 441. The evidence Henrichs points to in support of his misplaced argument that Safeway wrongfully discharged him for reporting a violation of public policy raises an issue of fact as to whether Safeway discharged him not because he violated the CBC, but because he reported a workplace injury.

Henrichs testified at his deposition that he did not file his injury as a workers' compensation claim because he and other Safeway store managers "were feeling a lot of pressure" about the number of workers' compensation claims throughout the district. (Doc. 25-1, at 7). Henrichs explained that he did not want

to adversely affect anyone's bonus, including Cruson's, by submitting his injury as a workers' compensation claim. (Doc. 25-1, at 7).

Henrichs maintains that Cruson then began a campaign of retaliation against him for submitting his injury report to Safeway. For example, Henrichs points to evidence that Cruson began visiting the Anaconda store more frequently after he submitted his injury report, and was constantly calling. (Doc. 25-6, at 4). Henrichs also claims that Cruson and another management employee unjustifiably berated him and criticized his job performance during a conference call just days before he was scheduled to take leave for surgery. (Doc. 25-11, at 5-7). And notwithstanding the fact that he received a favorable annual job evaluation just prior to taking medical leave, Henrichs has come forward with evidence that almost immediately upon his return Cruson presented him with a list of eleven items regarding his job performance that needed improvement or could result in his termination. (Doc. 25-5, at 20-21). Henrichs claims that as the summer wore on, Cruson unjustifiably criticized him and referred to him as a "whiner." (Doc. 25-1, at 8; 25-5, at 22). According to Henrichs, Cruson's campaign of retaliatory conduct culminated in his termination from employment on September 19, 2012.

Viewing the evidence in Henrichs' favor, the Court finds that Henrichs has pointed to sufficient evidence to raise a genuine issue of material fact as to

18

whether Henrichs was terminated not because he violated Safeway's CBC, but because he filed an injury report.  Because Henrichs has come forward with sufficient evidence to create an issue of fact regarding pretext, his wrongful discharge claim under Mont. Code Ann. § 39-2-904(1)(b) survives summary judgment.

To be sure, Henrichs' opposition brief is rather imprecise given his misunderstanding of the "public policy" prong embodied in Mont. Code Ann. § 39-2-904(1)(a).  But in the main, Henrichs' brief makes clear his position that the determinative issue is whether Safeway discharged him for the stated reason that he had violated the CBC or in retaliation for reporting a workplace injury.  (Doc. 24, at 7 & 12).  In its reply brief, Safeway points out that in arguing Safeway lacked good cause to discharge him, Henrichs does not expressly argue the stated reason for the discharge was pretextual.  But to the extent Henrichs' claim of retaliation for reporting his workplace injury might be viewed as a claim of pretext, Safeway argues there is no evidence to support the claim.  (Doc. 27 at 11 & 15).  As discussed, the record reflects otherwise.  And the Court must, of course, consider the record as a whole.  *See, Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1236 n. 1 (9th Cir. 2012).

## C.    Violation of Safeway's written personnel policy

Henrichs has also alleged a claim under Mont. Code Ann. § 39-2-904(1)(c), which provides that a discharge is wrongful if "the employer violated the express provisions of its own written personnel policy." Safeway argues this claim should be summarily dismissed because Henrichs has not produced any evidence that Safeway violated any of the express provisions of its written personnel policies in terminating Henrichs' employment. Safeway is correct.

Henrichs first contends that Safeway discharged him in violation of the CBC's non-retaliation provision, which states that "Safeway will not tolerate retaliation against an employee for providing information concerning, or in assistance of, any investigation(s) of potential or actual violations of this Code." (Doc. 22-8, at 6). But Henrichs has not pointed to any evidence that he provided information or assisted in any investigation of a potential or actual violation of Safeway's CBC. Rather, Henrichs' theory of the case is that Safeway retaliated against him for reporting a workplace injury. The CBC's non-retaliation provision is simply inapplicable.

Henrichs next argues that Safeway discharged him in violation of a CBC provision requiring truthful and honest dealings with and by Safeway employees. (Doc. 22-8, at 6). Henrichs relies specifically on the following passage: "Safeway's reputation for honesty and integrity also includes our dealings with all

20

employees.  As both employees and managers, we must be truthful in our dealings with each other and give honest information in all circumstances."  (Doc. 22-8, at 6).

Although it is not entirely clear, Henrichs apparently takes the position that Cruson violated this provision because he acted without honesty and integrity by allegedly retaliating against him for reporting his workplace injury.  But the CBC's requirement that Safeway's employees and managers act with honesty and integrity is a general one, and cannot under the circumstances be construed as an "express provision" giving rise to a cause of action under § 904(1)(c) based on Cruson's alleged retaliatory conduct.  As discussed above, to the extent Henrichs alleges he was discharged in retaliation for reporting a workplace injury, his claim is properly brought under the good cause prong set forth in § 904(1)(b).

Henrichs also argues more specifically that Safeway violated the CBC's honesty and integrity requirements while investigating whether he maintained outside employment.  According to Cruson, he heard from a representative of one of Safeway's vendors in August 2012 that Henrichs was stocking Pepsi products at Safeway's competitor, the Anaconda Albertsons store. The representative apparently remembers things differently, however, and has said she simply told Cruson that Henrichs was riding in a Pepsi truck.

Regardless of whose recollection is accurate, it is undisputed that Safeway thereafter conducted an independent investigation and confirmed that Henrichs had maintained undisclosed outside employment with Harrington Bottling Company for several years. Cruson and Brezenski then met with Henrichs, who confirmed that he was named as Harrington Bottling Company's employee and also revealed that he was named as an employee of the local Coca-Cola distributor. Henrichs does not point to any evidence that Cruson, Brezenski, or Safeway lacked honesty or integrity in their investigation. Whether the Safeway vendor's representative said Henrichs was riding in a Pepsi truck or stocking Pepsi products is simply immaterial. Henrichs claim under § 904(1)(c) that Safeway discharged him in violation of the CBC's honesty and integrity requirements fails as a matter of law.

Finally, Henrichs claims Safeway discharged him in violation of a CBC provision regarding the protection of company assets. The CBC states that "[e]very employee is responsible for protecting the assets of the company," including its "property," and specifies that property "may not be taken, sold, traded, given away or destroyed without proper permission." (Doc. 22-8, at 12). Henrichs apparently contends that Cruson violated this policy by removing two unsecured inventory guns from the store during one of his on-site visits in order to

22

teach Henrichs a lesson. But even assuming Cruson did violate this particular CBC provision, such a violation has nothing whatsoever to do with Henrichs' discharge. It is undisputed that Safeway discharged Henrichs for failing to disclose outside employment in violation of the CBC's conflicts of interest provisions. Henrichs cannot maintain a wrongful discharge claim under § 904(1)(c) based on an alleged violation of a personnel policy that has nothing whatsoever to do with his discharge. Because Henrichs has not come forward with any evidence that Safeway violated an express provision of its own written personnel policy in terminating his employment, his claim under § 904(1)(c) fails as a matter of law.

IV.     **Conclusion**

For the reasons set forth above,

IT IS ORDERED that Safeway's motion for summary judgment is GRANTED as to Henrichs' claims under Mont. Code Ann. § 39-2-904(1)(a) and (c), including his claim for punitive damages, but DENIED as to Henrichs' claim under § 39-2-904(1)(b).

DATED this 20th day of November, 2014.

Jeremiah C. Lynch
United States Magistrate Judge

23